IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DUBUQUE DIVISION

THOMAS MESS,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C15-1013-LRR

**REPORT AND
RECOMMENDATION**

_____

      Plaintiff, Thomas Mess, seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income benefits (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Mess contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the court recommends that the Commissioner's decision be affirmed.

## I.    *BACKGROUND*

      Mess was born in 1967, and he completed high school. AR 66. He has past relevant work as a die maker, stamping press operator, laser beam machine operator, and warehouse worker. AR 66. He applied for DIB and SSI on January 11, 2012, alleging a disability onset date of January 1, 2012. AR 113. He alleged disability due to

depressive mood disorder, poor impulse control, back pain, migraines, and fibromyalgia. AR 412-474.

The Commissioner denied Mess' application initially and upon reconsideration. AR 175-178, 189-192. Mess then requested a hearing before an Administrative Law Judge (ALJ). On October 30, 2013, ALJ David Buell conducted a video hearing at which Mess and a vocational expert testified. AR 73-112. The ALJ issued a decision denying Mess' claim on January 7, 2014. AR 53-72. The ALJ found that Mess was unable to perform past relevant work. AR 66. However, the ALJ determined that there was other work Mess could perform such as cleaner, assembler of small parts, or a marker. AR 67.

The Appeals Council denied Mess' review of the ALJ's decision. AR 1-7. The ALJ's decision stands as the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Mess filed a complaint in this Court on April 30, 2015, seeking review of the Commissioner's decision. Doc. 4. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues, and the matter is now fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

2

work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 416.972(a)-(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work

situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work, then he is considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education,

and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 416.935.

## III.   THE ALJ'S FINDINGS

The ALJ made the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.  [Sic]

2.     The claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (20 C.F.R. §§ 404.1574 *et seq.,* and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: mood disorder, learning disorder, personality disorder, degenerative disc disease, and fibromyalgia (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

5.      The claimant has the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday) as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: he can stoop, crouch, kneel and crawl only occasionally. He cannot climb ladders, ropes or scaffolds.  He cannot be exposed to intense vibration, such as operating power tools.  He can only perform simple routine, repetitive work, requiring no close attention to detail, or independent judgment on the job.  He requires an occupation where all tasks assigned to him could be performed without interaction with the public. Regarding co-workers, he requires tasks that are essentially performed without coordination and require no cooperation or interaction with co-workers.  He is able to work in proximity to others.

6.      The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.      The claimant was born on December 29, 1967, and was 44 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964.)

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the

claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision (20 C.F.R. §§ 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 57-68.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

This Court must affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts

from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Mess argues the ALJ's decision is flawed for four reasons:

1.  The ALJ failed to give proper weight to the opinion of Timothy Wedeward, NP.

2.  The ALJ failed to give proper weight to the consultative physician.

3.  The ALJ erred by not following up with Dr. Gibson.

4.  The ALJ erred in not granting credibility to Mess' subjective allegations of pain.

The court will address these arguments separately below.

### A.   The ALJ Properly Evaluated the Nurse Practitioner's Opinion

The ALJ properly evaluated the opinion evidence from the nurse practitioner, Timothy Wedeward.   Nurse practitioners are not "acceptable medical sources."   Social Security Ruling ("SSR") 06-03p.   Opinions from these sources may provide valuable insight into the severity of an impairment and how that impairment affects an individual's ability to function.   SSR 06-03p; 20 C.F.R. §§ 404.1513(d), 416.913(d).   Unlike acceptable medical sources, however, non-acceptable medical sources cannot provide medical opinions or opinions entitled to controlling weight.   SSR 06-3p.   An ALJ may weigh opinions from such other sources using factors such as the nature and extent of the relationship between the source and the claimant; the degree to which relevant evidence supports the opinion; the consistency between the opinion and the record as a whole; whether the sources is a specialist in the area in which the opinion is based; and other factors that support or contradict the opinion.   SSR 06-3p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, the ALJ gave some weight to Mr. Wedeward's December 2012 Mental RFC Questionnaire.  AR 62, 599-604.   The Mental RFC Questionnaire had five categories of limitations: 1) unlimited or very good; 2) limited but satisfactory; 3) seriously limited,

but not precluded; 4) unable to meet competitive standards; and 5) no useful ability to function. AR 602. "[S]eriously limited, but not precluded" means a substantial loss of ability to perform the activity. *Id*. Contrary to plaintiff's assertion, choosing this category did not mean Mr. Wedeward believed plaintiff was precluded from working. If Mr. Wedeward believed that plaintiff was precluded from an activity, he could have indicated the fourth or fifth categories. Instead, Mr. Wedeward's opinion only indicated the second and third categories, neither of which precluded work activity.

Mr. Wedeward opined that plaintiff had a limited but satisfactory ability to:

- remember work-like procedures;
- understand and remember very short and simple instructions;
- sustain an ordinary routine with special supervision;
- work in coordination with or proximity to others;
- make simple work-related decisions;
- perform at a consistent pace without an unreasonable number and length of rest periods;
- ask simple questions or request assistance;
- accept instructions and respond appropriately to supervisor criticism;
- get along with co-workers or peers;
- respond appropriately to changes in a routine work setting;
- be aware of normal hazards;
- set realistic goals or make plans independently;
- interact with the general public; and,
- maintain socially appropriate behavior

AR 602-603. Mr. Wedeward's opinion was that plaintiff was seriously limited, but not precluded from the remaining work activities:

- maintaining attention for a two-hour segment;
- maintaining regular attendance and being punctual;
- completing a normal workday and workweek without interruptions from psychologically based symptoms;
- dealing with normal work stress;
- understanding, remembering, and carrying out detailed instructions;
- dealing with stress of semi-skilled or skilled work;

10

- adhering to basic standards of neatness and cleanliness;
- traveling in unfamiliar places; and,
- using public transportation.

AR 602-603. Thus, contrary to plaintiff's assertion, Mr. Wedeward did not opine that plaintiff was precluded from performing any of these work activities.

The ALJ did not completely dismiss Mr. Wedeward's opinion. Rather, he gave appropriate reasons for assigning this opinion some, but not full, weight. AR 62. The ALJ noted an inconsistency between Mr. Wedeward's opinion that plaintiff would miss four days of work per month, yet was not precluded from performing any work activities. AR 62, 604. The vocational expert testified that an individual who missed four days of work per month would be precluded from all competitive employment. AR 110. Thus, Mr. Wedeward's opinion regarding plaintiff's preclusive absences was inconsistent with his opinion that plaintiff was not precluded from completing a normal workweek and could perform work activities independently, appropriately, effectively, and on a sustained basis in a regular work setting. AR 602-603. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (a treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given).

The ALJ also found Mr. Wedeward's opinion inconsistent with his own treatment notes that showed mostly normal mental status exam results. AR 62. For example, although plaintiff exhibited a depressed mood and affect and occasional suicidal ideations on May 7, 2012, by August 3, 2012, plaintiff reported that despite some initial insomnia, he was feeling better since getting back on medication. AR 540, 574. If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). Mental status examination showed plaintiff was alert and oriented; his general appearance, speech, and psychomotor activity were within normal limits; his mood and affect were bright; his thought content was clear; he

denied suicidal or homicidal ideations; he had logical associations; he had fair insight and judgment; and his memory, concentration, and attention span were intact. AR 542-543. His pain was zero on a scale of one to ten. AR 542. Mr. Wedeward assessed plaintiff with a global assessment of functioning ("GAF")[1] score of 60[2] (AR 543).

In December 2012, plaintiff had the same mental status examination, except for some occasional suicidal ideation, but no intent. AR 621. Mr. Wedeward did not believe that plaintiff had an impairment in impulse control. AR 601. Plaintiff reported an improved mood, and Mr. Wedeward unflagged him for the suicide prevention team. AR 621. Mr. Wedeward said that his December 2012 opinion was supported by symptoms such as sleep disturbance, emotional withdrawal or isolation, suicidal thoughts, feelings of guilt or worthlessness, anhedonia, decreased energy, and persistent mood or affect disturbances. AR 601. However, Mr. Wedeward's own treatment notes leading up to his December 2012 opinion were inconsistent with these reported symptoms. The ALJ may properly discount an opinion where the limitations listed on the form were never mentioned in treatment records, nor supported by any objective testing or reasoning, or when they were made for purposes of supporting a claim for benefits rather than in the course of treatment. *See Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007); *see*

---

[1] The GAF is a numerical score from 0 to 100 that considers the "psychological, social, and occupational functioning." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 and 34 (Text Revision 4th ed. 2000) ("DSM-IV-TR").

[2] A GAF score of 51 to 60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR, at 34. A GAF score of 61 to 70 corresponds to "some mild symptoms or some difficulty in social, occupational, or school functioning but general functioning pretty well, has some meaningful interpersonal relationships." *Id. at* 32.

*also Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (inconsistencies in the medical record, as well as the provider's failure to document objective medical evidence to support claimant's subjective complaints, justified giving the opinions less weight); *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

Mr. Wedeward's treatment notes following his December 2012 opinion also supported the ALJ's decision to assign only some weight to the opinion. In January 2013, plaintiff denied suicidal ideations and reported doing "OK" and having improved sleep. AR 614. Plaintiff's mental status examination revealed the same normal results as plaintiff's August 2012 visit, and Mr. Wedeward increased his GAF to 62. AR 617. Mr. Wedeward noted that plaintiff had good self-control, only mild dysphoria, and few risk factors. AR 618. When plaintiff saw Mr. Wedeward in May 2013, he reported a better mood, less isolation, and no suicidal ideation. AR 646. Mental status examination showed intact concentration, attention, and memory; fair insight and judgment; brighter mood and effect; clear thought content; and normal speech, psychomotor activity, and general appearance. AR 648. His GAF was 65. AR 649.

In July 2013, plaintiff's mental status examination showed depressed mood, impaired judgment and insight, strong suicidal ideation, subdued speech, and retarded psychomotor activity. AR 679. However, plaintiff reported that his father had recently been diagnosed with cancer. *Id.* He reported that he lived with both his parents but only got along with his father, and was worried his mother would make him leave after his father died. AR 676. In addition, he had recently lost several other family members. AR 699. Mr. Wedeward admitted plaintiff to the hospital for suicidal ideation. *Id.* Situational stressors (*i.e.*, loss of job, chaos at home, inability to do same physical

activities as before) do not rise to the level of a mental impairment contemplated by the Act. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

The ALJ also found that Mr. Wedeward's opinion regarding plaintiff's absences was inconsistent with plaintiff's work activity. AR 604. Specifically, the ALJ noted plaintiff's own testimony that he would have been hired permanently at his previous job if he had not punched another employee. AR 62, 83. In fact, plaintiff said he had a "good record" at that job. AR 83. Thus, the ALJ reasonably concluded plaintiff's performance and attendance was satisfactory, and therefore was inconsistent with Mr. Wedeward's opinion regarding plaintiff having to miss four days of work per month due to his impairments. AR 62. *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (admitted abilities inconsistent with treating physician opinion).

Finally, plaintiff's subjective reports of pain do not support Mr. Wedeward's opinion. Although Mr. Wedeward said that "depression can lower a patient's tolerance to pain," this vague and conclusory statement was not entitled to any weight. AR 603. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (appropriate to disregard a physician's vague, conclusory statements). Further, the ALJ found plaintiff's allegations of pain were not entirely credible. In fact, when plaintiff saw Mr. Wedeward, his reported pain was often zero, and no more than three, except for when he had a score of four the day he reported suicidal ideation following his father's diagnosis. AR 542, 556, 574, 618, 623, 656, 680, 696, 724, 729. Thus, other than a situational stressor, Mr. Wedeward's treatment notes do not show that plaintiff's depression affected his pain. Opinions based on discredited subjective complaints are not entitled to significant weight. *See Kirby*, 500 F.3d at 709 (medical opinion relied heavily on claimant's subjective report of symptoms, which the ALJ found not credible).

In sum, the ALJ applied the relevant factors for weighing the nurse practitioner's opinion and gave legitimate reasons for the weight assigned. Substantial evidence supports the ALJ's conclusion. *Wildman*, 596 F.3d at 964; *Loving,* 16 F.3d at 969.


## B. *The ALJ Properly Evaluated the Consultative Examiner's Opinion*

The Commissioner hired Dr. Keith Gibson, Ph.D., to perform a mental health evaluation of Mr. Mess. AR 496. Dr. Gibson diagnosed Mr. Mess with Depressive Disorder, NOS. He could not rule out Intermittent Explosive Disorder. AR 498. Dr. Gibson provided Mr. Mess with the Beck Depression Inventory and Mini Mental Status Exam. AR 496. The results of the Beck Depression Inventory was a score of 33, indicating depressive symptoms of severe intensity are currently present. AR 498. The score on the Mini Mental Status Exam was a 27 out of 30 points. AR 498. Dr. Gibson noted that "[c]hronic depressive symptoms and chronic low back pain would impair Mr. Mess' capacity to maintain attention, concentration and pace sufficient for full-time gainful employment." AR 499. Dr. Gibson also stated Mr. Mess was most impaired in the area of interacting appropriately with others in the work place, and that co-workers would be inclined to give Mr. Mess a "wide berth," and that Mr. Mess uses his temper to intimate others. *Id*. This is not a disability.

The ALJ gave limited weight to Dr. Gibson's opinions and findings. AR 63. The ALJ stated that an individual with a normal mental status is not consistent with a finding of disabling mental limitation. *Id*. Secondly, the ALJ found that the claimant using his temper as an intentional inter-personal tactic to intimidate others or causing others to give him a wide berth are not the result of any medical conditions. *Id*. Again, this is not a disability.

Dr. Gibson opined that plaintiff was capable of remembering and understanding instructions, procedures, and locations in a work setting. AR 499. He noted that plaintiff's depressive symptoms and chronic low back pain impaired his capacity to maintain attention, concentration, and pace sufficient for full-time gainful employment. *Id*. He opined that plaintiff had difficulty getting along with others, and his co-workers would likely be inclined to give him a wide berth. *Id*. Dr. Gibson opined that plaintiff was most impaired in the area of interacting appropriately with others and was likely to use his temper to intimidate or control others. *Id*. Dr. Gibson said that plaintiff made reasonable decisions, and his judgment was intact. *Id*. He also believed plaintiff had the cognitive capacity to respond adaptively and flexibly to changes in the work place. *Id*.

The ALJ found that Dr. Gibson's opinion in this regard was inconsistent with the objective medical evidence. Dr. Gibson's mental status examination of plaintiff showed his thought flow and speech were normal, and he was essentially cooperative. AR 498. Plaintiff denied obsessions, compulsions, phobias, auditory or visual hallucinations, and ideas of reference or influence. *Id*. The ALJ noted that other than a depressed mood, plaintiff's mental status examination was otherwise normal. AR 62. Contrary to plaintiff's assertion, normal mental status findings can be inconsistent with disabling mental limitations. *Cobb v. Colvin*, No. 2:13CV0015-TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (unpublished) (normal mental status examinations supported ALJ's credibility finding). Although the ALJ correctly noted that plaintiff scored 27/30 on the Mini Mental Status Exam, this was just one part of the mental status summary provided in Dr. Gibson's report. AR 62, 498.

Moreover, the ALJ considered, but was not required to give great weight to, Dr. Gibson's opinion that plaintiff's depressive symptoms and back pain impaired his capacity

to maintain attention, concentration, and pace sufficient for full-time gainful employment (AR 63, 499). To the extent that Dr. Gibson opined about plaintiff's ability to maintain gainful employment, that opinion concerns an issue reserved to the Commissioner and is not entitled to controlling weight. *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005); 20 C.F.R. § 416.927(d)(2); SSR 96-5p.

Also, Dr. Gibson's opinion was based on plaintiff's depressive symptoms and back pain. AR 499. Notably, Dr. Gibson did not perform a physical examination of plaintiff, and thus, this part of the opinion appears to be purely based on plaintiff's subjective report of lower back pain. AR 496. The ALJ properly found plaintiff's subjective statements were not entirely credible. AR 62. An opinion based solely on these subjective statements is not entitled to weight. *See Kirby*, 500 F.3d at 709 (medical opinion relied heavily on plaintiff's subjective report of symptoms, which the ALJ found not credible).

Further, the ALJ noted that the other state agency medical experts disagreed with Dr. Gibson's opinion regarding plaintiff's attention, concentration, and pace. AR 63. In fact, they believed plaintiff had only mild difficulty in this area and could perform some detailed instructions. AR 63, 117, 131, 150, 165. The ALJ gave some, but not controlling, weight to these opinions. AR 63.

The ALJ found a middle ground between these two opinions based on the entire record, which he concluded supported moderate limitations in this area. AR 60, 63. The record evidence supports this conclusion. In fact, plaintiff's mental examinations repeatedly showed normal concentration and attention, despite depressive symptoms. AR 31, 42, 411, 421, 426, 432, 439, 480, 482, 543, 556, 590, 617, 622, 633, 648, 654, 695, 718, 722, 728. Plaintiff only occasionally reported mild difficulty with focus and concentration. AR 423, 429, 436, 455, 470, 472-473. Thus, the ALJ properly

considered Dr. Gibson's opinion regarding plaintiff's attention, concentration, and pace, and gave it limited weight. AR 63.

The ALJ also properly considered Dr. Gibson's opinion regarding plaintiff's anger. The ALJ did not deny that plaintiff's temper itself was the result of a medical condition. Rather, the ALJ believed that the way in which plaintiff used his temper, i.e., to intimidate others, was not medically related. AR 63. To support this conclusion, the ALJ properly noted that plaintiff was able to participate in a bowling league and play games and attend movies with friends, which showed that while plaintiff's temper may result from a medical condition, he could control when and for what purpose he *used* his temper. *Id*. In addition, treating providers generally noted that while plaintiff was diagnosed with impulse control disorder, his symptoms were generally managed, and he exhibited good self-control. AR 436, 544, 558, 575, 618, 623, 649, 655, 670, 696, 723. In fact, Dr. Gibson did not even indicate that plaintiff had an impulse control impairment. AR 601.

Regardless, the ALJ, nonetheless, accounted for plaintiff's anger by finding he should work independently of others without the need to engage in much communication, which could in turn lead to disagreements. AR 63. Also, the ALJ gave great weight to the state agency medical experts' opinions that "due to his temper and difficulty getting along with others in the workplace," plaintiff would do best in an environment with minimal interpersonal contact. *Id*. The ALJ, accordingly, assessed an RFC that included tasks that are performed without coordination and require no cooperation or interaction with co-workers or the public. AR 60. In fact, the ALJ specifically said that he included this limitation due to plaintiff's "history of assaults and outbursts." *Id*.

Finally, the ALJ did not disregard Dr. Gibson's finding that plaintiff had a GAF of 50. The ALJ specifically mentioned this finding. AR 62, 499. However, as the ALJ

noted, GAF scores from plaintiff's treating providers routinely showed good functioning, with scores in the 60s and 70s. AR 62, 411, 426, 432, 439, 473, 483, 543, 617, 649, 695, 722, 728. As this portion of Dr. Gibson's report was inconsistent with the overall medical evidence, the ALJ was not required to give it weight.

In sum, substantial evidence supports the ALJ's specific, legitimate reasons for the weight assigned to the consultative examiner's opinion. The ALJ carefully took into account plaintiff's limitations, accepting medical opinion, but then carefully tailored jobs for plaintiff consistent with these limitations instead of just declaring plaintiff disabled. This is the ALJ's job, and he seems to have done it well in this regard.

### C. The ALJ Was Not Required to Recontact the Consultative Examiner

The ALJ was not required to recontact Dr. Gibson. An ALJ is required to recontact medical sources only if the available evidence does not provide an adequate basis for determining the merits of the disability claim. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); 20 C.F.R. §§ 404.1512(e), 416.912(e), 404.919a(b); 416.919a(b).

As the ALJ noted, Dr. Gibson said that plaintiff's depressive symptoms and back pain impaired his capacity to maintain attention, concentration, and pace sufficient for full-time work. AR 63, 499. Dr. Gibson also said that plaintiff was most impaired in interacting appropriately with others in a work environment. *Id.* However, Dr. Gibson believed that plaintiff had the cognitive ability to respond adaptively to changes in the workplace and was capable of remembering and understanding instructions, procedures, and locations in a work setting. AR 399. Thus, the ALJ properly noted that it was unclear whether Dr. Gibson felt plaintiff could not work due to concentration or interpersonal problems. AR 63. In fact, Dr. Gibson did not definitively say that plaintiff

was unable to perform any work at all. Rather, Dr. Gibson merely said that plaintiff's symptoms impaired some types of work activity (attention, concentration, and pace and interacting with others), which the ALJ considered in his RFC assessment. The ALJ, here, had sufficient evidence to make an informed decision, and thus, no further contact with Dr. Gibson was required.

### D.     The ALJ Properly Measured Mess' Subjective Allegations of Pain

Mess argues that the ALJ failed to evaluate his subjective allegations properly within the framework established by the Commissioner's regulations and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The court disagrees and finds that the ALJ provided good reasons, supported by substantial evidence, for these credibility findings.

#### 1.     The Credibility Analysis

In determining a claimant's credibility, the ALJ must consider:

(1)     the claimant's daily activities;

(2)     the duration, intensity, and frequency of pain;

(3)     the precipitating and aggravating factors;

(4)     the dosage, effectiveness, and side effects of medication; and

(5)     any functional restrictions.

*Polaski*, 739 F.2d at 1322; see also 20 C.F.R. § 416.929(c)(3). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).

Although an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, the lack of such evidence is a factor the ALJ may consider. *Halverson*, 600 F.3d at 931-32; *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). A claimant's credibility is "primarily for the ALJ to decide,

not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Thus, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id*. The ALJ need not discuss each *Polaski* factor if the ALJ "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

### 2. The Record in this Case Supports the ALJ's Credibility Determination

The ALJ, here, found that plaintiff's subjective complaints were not entirely credible. AR 62. Plaintiff's diagnosis of depression does not require the ALJ to find his pain complaints entirely credible. Plaintiff's reliance on *Cox v. Apfel,* in support of this proposition, is misplaced. In that case, the claimant had undergone three back surgeries and had a morphine pump implant. *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998). Here, plaintiff's pain treatment was considerably more conservative and did not involve surgery or an implant. Thus, *Cox* is distinguishable and not controlling. Further, the ALJ considered both plaintiff's physical and mental impairments throughout his decision. Despite plaintiff's depression, the record, nonetheless, supports the ALJ's credibility finding.

The objective medical evidence did not support plaintiff's allegations of disabling pain. AR 63. The ALJ considered MRIs showing degenerative changes with disc herniation. AR 63-64, 413. However, the ALJ also considered that plaintiff's neurological examinations were normal. AR 64, 414, 442-443, 448. He had normal gait, range of motion, and heel/toe walking. AR 64, 414, 443, 504, 448, 473, 482, 584.

His reported pain was generally no more than three on a ten-point scale.  AR 542, 556, 574, 590, 618, 623, 635, 650, 656, 670, 696, 724, 729.

Plaintiff's self-reported abilities were inconsistent with his pain complaints. Specifically, plaintiff told a consultative examiner that he could climb ladders, kneel, and crawl.  AR 504.  He said he could lift up to one hundred pounds and carry twenty pounds for a couple city blocks.  AR 64, 505.

The ALJ properly considered plaintiff's fibromyalgia.  The ALJ found, based on the evidence of record, that plaintiff's fibromyalgia was not only a medically determinable impairment, but was also a "severe" impairment at step two of the sequential evaluation process.  AR 58.  However, plaintiff's fibromyalgia diagnosis does not undermine the ALJ's credibility finding.  *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (diagnosis alone does not confer disability).  The ALJ considered SSR 12-2p, pertaining to the evaluation of fibromyalgia, and did not discount plaintiff's fibromyalgia because of lack of trigger points.  AR 64-65.  Rather, the ALJ properly summarized the record, which showed that plaintiff's rheumatologist diagnosed him with fibromyalgia because there were no other positive tests, including trigger points, to account for his pain.  AR 64, 612.  Thus, plaintiff has failed to establish reversible error. In order for plaintiff to meet his burden of proving reversible error exists, he must show that an alleged error was harmful and has a potential impact on the disposition of the case. *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

The ALJ considered that plaintiff's activities were inconsistent with claims of disabling pain.  AR 64.  For example, he fished, went to movies, and played video games with his friends.  AR 64, 499.  He said that bowling in a league did not bother his back.  AR 498.  Plaintiff was also able to drive and shop in stores.  AR 335.  He even considered riding a horse.  AR 731.  Such activities, especially riding a horse, are

inconsistent with disabling pain and weigh against plaintiff's credibility. *Wagner*, 499 F.3d at 852 (claimant's credibility diminished by engaging in daily activities such as fixing meals, doing housework, shopping for groceries, and visiting friends).

Although plaintiff later testified that he no longer bowled, he gave this testimony after the Commissioner had already denied his claims citing his bowling league as one piece of evidence supporting the decision. AR 87, 180. Plaintiff has not explained or established that his pain worsened between the time he reported bowling to his treatment providers and the time he denied bowling at the hearing. The ALJ can be wary that claimants attempt to present themselves in a worse light as their claims proceed through the administrative denial process. *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (proper for ALJ to consider claimant's motivation).

The ALJ also considered a third-party function report from plaintiff's mother. AR 65. She noted that plaintiff went bowling twice a week. AR 65, 327. Notably, she did not indicate that plaintiff's conditions affected his ability to walk, sit, or stand. AR 65, 329. This report was inconsistent with the function report that plaintiff completed, in which he alleged difficulties walking, sitting, and standing. AR 337. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Wagner*, 499 F.3d at 851.

## VI.    CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of Mess' impairments, the court RESPECTFULLY RECOMMENDS that the Commissioner's determination that Mess was not disabled be **affirmed** and that judgment be entered against Mess and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 16th day of May, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa